UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Randall Arthur Radunz,

                 Plaintiff,

vs.

Officer Michael Meyer and
Officer Brian Hall,

                 Defendants.        Civ. No. 08-268 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendants Michael Meyer ("Meyer"), and Brian Hall ("Hall"), for Summary Judgment. See, Docket No. 16. For these purposes, the Plaintiff Randall Arthur Radunz appears pro se; and Meyer and Hall appear by James F. X. Jerskey, Assistant St. Paul City Attorney. Having reviewed the parties' written submissions, and deeming oral argument unnecessary, we recommend

that the Defendants' Motion for Summary Judgment be granted as to all of the Plaintiff's claims.

## II. Factual and Procedural History

The Plaintiff brings this action under Title 42 U.S.C. §1983, and alleges that the Defendants violated his rights under Fourth, Eighth, and Fourteenth Amendments, during the course of a traffic stop on February 27, 2003.[1] See, Amended Complaint, Docket No. 8, at 1-2.

On that date, at approximately 8:00 o'clock p.m., the Defendants, who are police officers with the St. Paul Police Department, were on patrol and traveling north on Payne Avenue, in St. Paul, Minnesota. See, Complaint, Docket No. 1, Exhibit 1 at 1.[2] As the Defendants approached Minnehaha Avenue, they began driving behind the Plaintiff's vehicle, which had only one (1) functioning brake light. Id. The Defendants activated their emergency lights, and stopped the Plaintiff's vehicle. Id. The Defendants then turned on their high beams, and spotlight, in order to illuminate the interior of the Plaintiff's vehicle, which included the Plaintiff, who was driving the

---

[1]The Defendants have been sued in both their individual and official capacities.

[2]The Amended Complaint cites to Exhibits which were attached to the original Complaint, but which were mistakenly not attached to the Amended Complaint.

vehicle, and two (2) passengers. Id. The front seat passenger was a black female, who was later identified as Rachel Lorna Young ("Young"). Id., Exhibit 1. As Meyer approached the driver's side of the vehicle, he saw Young, first bending forward to dig through a black bag, then pulling her hands away from the bag.[3] Id., Exhibit 1; Exhibit 4 at 2. At Meyer's request, the Plaintiff provided his driver's license. Id., Exhibit 4 at 2.

Meanwhile, Hall approached the passenger side of the vehicle, and observed Young visibly shaking with her hands in her lap. Id. During his discussion with Young, Hall also noticed that her voice was cracking. Id. Hall then asked Young if she had any contraband on her person, and Young admitted to possessing a small amount of marijuana. Id. At that point, Hall asked Young to step out of the car, and to provide her driver's license. Id. Young did not have any identification, but she gave Hall a compact which contained a small amount of marijuana. Id. The Defendants then placed both Young, and the Plaintiff, in separate squad cars. Id.

---

[3]According to Sergeant Jean Baraber's police report, Young was digging through a white plastic bag, which was hanging in front of the passenger side glove box. See, Complaint, supra, Exhibit 1 at 1. However, the State Court, which conducted a Suppression Hearing in connection with Plaintiff's criminal proceedings, described the bag as black in color. Id., Exhibit 4 at 3.

The Defendants searched Young's black bag, and discovered two (2) Altoid boxes which contained crack cocaine.  Id.  When the Plaintiff was informed by one of the police officers about the crack cocaine, the Plaintiff said "[i]t's not her's, it's, it's mine," "[s]he has a crack problem and I bought it for her."  Id., Exhibit 1 at 2; Exhibit 4 at 3.  After the Plaintiff's admission, the Defendants searched the Plaintiff's vehicle, and found more crack cocaine in the vehicle's center console.  Id.  After the search of the vehicle, the Defendants learned that the Plaintiff's drivers license  had been suspended, and that Young had an active felony Warrant.  Id.  As a result, both the Plaintiff and Young were arrested.  Id., Exhibit 1 at 2.  The Plaintiff was transported to the Ramsey County Jail, where he was detained overnight, interviewed, and then released.  Id. at 3.

On May 9, 2003, the Plaintiff was charged with fifth degree possession of cocaine, in violation of Minnesota Statutes Section 152.025, Subdivisions 2(1) and 3(a).[4]  Id., Exhibit 1 at 2.  On that same date, a Summons and Complaint was issued

---

[4]Minnesota Statutes Section 152.025, Subdivision 2(1), states that a person is guilty of controlled substance crime in the fifth degree if "the person unlawfully possesses one or more mixtures classified in * * * Schedule II[.]"  Minnesota Statutes Section 152.02 Subdivision 3(d), which defines Schedule II substances, includes cocaine.  A controlled substance crime in the fifth degree is punishable by a sentence "to imprisonment for not more than five years or to a payment of a fine of not more than
(continued...)

for the Plaintiff and, after he failed to appear, a bench Warrant was issued to secure his appearance.  Id., Exhibit 1 at 3-4.  Law enforcement subsequently learned that the Plaintiff had failed to appear because he was incarcerated in Wisconsin.  Id. at 3.  Ultimately, the Plaintiff was transferred to the Ramsey County Jail in order to face his criminal charges.  Id. at 3.

During the Plaintiff's criminal proceedings, the State Court determined that the search of the Plaintiff's vehicle was not supported by probable cause.  Id., Exhibit 4 at 4.  First, the Court concluded that the totality of the circumstances, including Young's reaching into the black bag, Hall's observation that Young's hands were shaking and her voice was cracking, and Young's statement that she possessed a small amount of marijuana, did not provide a reasonably articulable suspicion of criminal activity, nor did those facts provide probable cause for the search of her bag.  Id., Exhibit 4 at 5.  The Court also concluded that probable cause did not exist to support the subsequent search of the Plaintiff's vehicle.  See, Plaintiff's Memorandum in Opposition, Docket No. 23, Exhibit 1 at 6.

---

(...continued)
$10,000, or both."  Minnesota Statutes Section 152.025, Subdivision 3(a).

Although the Plaintiff told the Defendants that the crack cocaine belonged to him, the Court held that there was not a sufficient nexus between the crack cocaine, which was found on Young's person, and the Plaintiff's vehicle, so as to support the Defendants' belief that they would find additional crack cocaine in the vehicle. Id. Accordingly, the Court suppressed the drugs from the evidence, and dismissed the criminal charges. See, Complaint, supra, Exhibit 4 at 4. After the charges were dismissed, the Plaintiff sought to have the record of his criminal charges expunged, pursuant to Minnesota Statutes Section 609A.03.[5] See, Amended Complaint, supra at p. 4; Complaint, supra, Exhibit 5. However, because the Plaintiff was then incarcerated, his request was denied. See, Amended Complaint, supra at p. 4; Complaint, supra, Exhibit 5.

As noted, the Plaintiff contends that the Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights, during the course of the traffic stop on February 27, 2003. See, Amended Complaint, supra at p. 1-4. Specifically, the Plaintiff alleges: 1) that his Fourth and Fourteenth Amendment rights were violated by the illegal search of his vehicle, and by his arrest; 2) that his Eighth Amendment rights

---

[5]Minnesota Statutes Section 609A.03, Subdivision 1, provides that "[a]n individual who is the subject of a criminal record who is seeking the expungement of the record shall file a petition under this section and pay a filing fee[.]"

were violated, because his arrest resulted in criminal charges which subjected him to multiple detentions, and which affected his programming while incarcerated; and 3) that his Fourteenth Amendment right to equal protection was violated by the State of Minnesota's refusal to expunge his criminal record.  See, Amended Complaint, supra at p. 4.

The Defendants now bring their Motion for Summary Judgment as to all of the Plaintiff's claims.  In support of the Motion, the Defendants contend that the Plaintiff has failed to state a claim under the Eighth and Fourteenth Amendments, and they further contend that they are protected by qualified immunity as to the Plaintiff's Fourth Amendment claim.  See, Defendants' Memorandum in Support, Docket No. 17, at 4-6.  The Plaintiff opposes the Defendants' Motion and we address the parties' arguments in turn.

### III.  Discussion

A.    Standard of Review.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1118 (8th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 327

(1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th

Cir. 2004), cert. denied, 544 U.S. 977 (2005).   Summary Judgment is appropriate

when we have viewed the facts, and the inferences drawn from those facts, in a light

most favorable to the nonmoving party, and we have found no triable issue.   See,

<u>Smutka v. City of Hutchinson</u>, 451 F.3d 522, 526 (8th Cir. 2006), citing <u>Mayer v.

Nextel W. Corp.</u>, 318 F.3d 803, 806 (8th Cir. 2003); <u>Eide v. Grey Fox Technical Servs.

Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020,

1023 (8th Cir. 2003).

For these purposes, a disputed fact is "material" if it must inevitably be resolved

and the resolution will determine the outcome of the case, while a dispute is "genuine"

if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving

party.   See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned

Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004);

<u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported

Motion, the burden shifts to the nonmoving party to demonstrate the existence of a

genuine dispute.   In sustaining that burden, "an adverse party may not rest upon the

mere allegations or denials of the adverse party's pleading, but the adverse party's

response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

B.    Legal Analysis. Before addressing the merits of the Plaintiff's Fourth Amendment claim, we first address the Plaintiff's argument that collateral estoppel applies with respect to the State Court's Order in the underlying criminal proceeding.

- 9 -

1.     The Doctrine of Res Judicata.

a.     Standard of Review. "'Res judicata' is the term traditionally used to describe two discrete effects:  1) what we now call claim preclusion, which is a valid final adjudication of a claim precludes a second action on that claim or any part of it; and 2) issue preclusion, long called 'collateral estoppel," which traditionally occurs where an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim." Leonard v. Southwestern Bell Corp. Disability Income Plan, 341 F.3d 696, 701 (8th Cir. 2003), citing Thomas v. General Motors Corp., 522 U.S. 222, 233 n. 5 (1998).

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Board of Education, 465 U.S. 75, 81 (1984), citing Allen v. McCurry, 449 U.S. 90, 96 (1980). Accordingly, we apply Minnesota principles of res judicata to determine the preclusive effect, if any, of the State Court ruling on the Plaintiffs' proposed claims.

Under Minnesota law, "[r]es judicata precludes parties from raising subsequent claims in a second action when:  '(1) the earlier claim involved the same set of factual

circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter.'" <u>Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P</u>, 732 N.W.2d 209, 220 (Minn. 2007), quoting <u>Hauschildt v. Beckingham</u>, 686 N.W.2d 829, 840 (Minn. 2004).  "Res judicata prohibits parties from raising a claim in a second suit that was, or 'could have been,' litigated in the earlier action." <u>Drewitz v. Motorwerks, Inc.</u>, 728 N.W.2d 231, 239 (Minn. 2007), citing <u>Hauschildt v. Beckingham</u>, supra at 840; see also, <u>Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P</u>, supra at 220 ("Res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action."), citing <u>State v. Joseph</u>, 636 N.W.2d 322, 327 (Minn. 2001).

In effect, res judicata "is essentially a finality doctrine which dictates that there be an end to litigation." <u>Dorso Trailer v. American Body & Trailer</u>, 482 N.W.2d 771, 773-74 (Minn. 1992), citing <u>Federated Mutual Ins. Co. v. Litchfield Prec. Comp., Inc.</u>, 456 N.W.2d 434, 438 (Minn. 1990).  Accordingly, it is "well established in Minnesota that a party 'should not be twice vexed for the same cause, and that it is for the public good that there be an end to litigation.'" <u>Hauser v. Mealey</u>, 263 N.W.2d 803, 807 (Minn. 1978), quoting <u>Shimp v. Sederstrom</u>, 233 N.W.2d 292, 294 (Minn. 1975).

By comparison, collateral estoppel precludes the relitigation of an issue that was previously decided by another Court as a final Judgment.  See, <u>Allen v. McCurry</u>, supra at 94; <u>W.F.M., Inc. v. Cherry County</u>, 279 F.3d 640, 643 (8th Cir. 2002); <u>Schumacher v. Halverson</u>, 467 F. Supp.2d 939, 945-46 (D. Minn. 2006).  For collateral estoppel to apply, each of the following elements must be satisfied:

> (1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estoped party was a party or in privity with a party to the prior adjudication; and (4) the estoped party was given a full and fair opportunity to be heard on the adjudicated issue.

<u>Illinois Farmers Ins. Co. v. Reed</u>, 662 N.W.2d 529, 531 (Minn. 2003); <u>A & H Vending Co. v. Comm'r of Revenue</u>, 608 N.W.2d 544, 547 (Minn. 2000).

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."  <u>Allen v. McCurry</u>, supra at 96, citing <u>Title 28 U.S.C. §1738</u>; see also, <u>United States v. B.H.</u>, 456 F.3d 813, 816 (8th Cir. 2006); <u>In re Scarborough</u>, 171 F.3d 638, 641 (8th Cir. 1999), cert. denied, 528 U.S. 931 (1999), citing <u>Baker Elec. Coop. Inc. v. Chaske</u>, 28 F.3d 1466, 1475 (8th Cir. 1994).

However, collateral estoppel does not apply when the issue the moving party seeks to have precluded is not identical to the issue previously decided.  See, <u>Velde v. Reinhardt</u>, 366 B.R. 894, 899 n. 9 (D. Minn. 2007), citing <u>Canady v. Allstate Ins.</u>

Co., 282 F.3d 1005, 1016 (8th Cir. 2002).  In deciding whether to apply the doctrine, Courts will consider whether an injustice will be done to the party against whom collateral estoppel is urged.  See, Schumacher v. Halverson, supra at 946, citing Johnson v. Consol. Freightways, Inc., 420 N.W.2d 608, 613-14 (Minn. 1988); Nelson v. Amer. Fam. Ins. Group, 651 N.W.2d 499, 511 (Minn. 2002).

In determining the scope of preclusion, that a prior State Court Judgment will exact, we necessarily look to the governing law of Minnesota.  See, Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 375 (1985)(a Federal Court must first consider the law of the State in which a Judgment was rendered when determining the preclusive effect to be accorded that Judgment), reh'g denied, 471 U.S. 1062 (1985).  Under Minnesota law, which is applicable here, "'[a] judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and their privies * * *.'"  U.S. West Financial Services, Inc. v. Buhler, Inc., 150 F.3d 929, 932 (8th Cir. 1998), quoting Dorso Trailer Sales, Inc. v. American Body & Trailer, supra at 774, quoting, in turn, Mattsen v. Packman, 358 N.W.2d 48, 49 (Minn. 1984).

Moreover, "a judgment becomes final when it is entered in the district court regardless of a pending appeal," because, under Minnesota law, "an appeal does not

affect the preclusive nature of a judgment." Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P., supra at 220, citing Wegge v. Wegge, 89 N.W.2d 891, 892 (Minn. 1958), Wilcox Trux, Inc. v. Rosenberger, 209 N.W. 308, 310 (Minn. 1926), Schoonmaker v. St. Paul Title & Trust Co., 188 N.W. 223, 224 (Minn. 1922), and State v. Spratt, 184 N.W. 31, 32 (Minn. 1921).

Lastly, "[t]he doctrine of collateral estoppel may be applied in a §1983 suit to preclude relitigation of a federal constitutional issue decided in state criminal proceedings." Duncan v. Clements, 744 F.2d 48, 51 (8th Cir. 1984), citing Allen v. McCurry, 449 U.S. 90, 101 (1980).

      b.    Legal Analysis. Here, the Plaintiff contends that, since the State Court determined that the Defendants violated his Fourth Amendment rights during the search of his vehicle, the Defendants cannot assert the defense of qualified immunity against his claim. In its decision, the State Court found that the Defendants did not have a reasonably articulable suspicion to search Young's bag, or probable cause to search the Plaintiff's vehicle. See, Complaint, supra, Exhibit 4 at 4-5. In reaching its decision, the State Court cited to cases from the Minnesota State Courts which, in turn, relied upon the Fourth Amendment, and Article I, Section Ten, of the Minnesota Constitution. See, Amended Complaint, supra at p.4; Complaint, supra,

Exhibit 4 at 4-6; State v. Weigand, 645 N.W.2d 125, 132 (Minn. 2002)(stating that Article I, Section Ten, of the Minnesota Constitution is "textually identical to the Fourth Amendment[.]").   As noted above, the State Court suppressed the drugs from evidence, and dismissed the criminal charges.

Plainly, the Plaintiff's claims in this action involve the same set of factual circumstances that were raised at the State Court Suppression Hearing -- namely, the Defendants' search of the Plaintiff's vehicle.   Nonetheless, even assuming that the State Court's Suppression Order constituted a final Judgment on the merits, we conclude that the final two (2) prongs of the collateral estoppel polemic have not been satisfied because the Defendants were not in privity with the parties involved in the Suppression Hearing, and they did not receive a full and fair opportunity to be heard at the Suppression Hearing.

Generally, collateral estoppel can only be invoked against a party, or an individual in privity with another party.   "Privity is determined on a case-by-case basis." Schumacher v. Halverson, supra at 947, citing Minnesota v. Victorsen, 627 N.W.2d 655, 660 (Minn. App. 2001).   "This court bases its privity determination on whether the party to be estopped (1) had a controlling participation in the first action, (2) had an active self-interest in the previous litigation, or (3) had a right to appeal

from a prior judgment[.]"   State v. Lemmer, 736 N.W.2d 650, 661 (Minn. 2007),

citing  Kaiser v. Northern States Power Co., 353 N.W.2d 899, 904 (Minn. 1984), and

County of Ramsey v. Stevens, 283 N.W.2d 918, 924 (Minn. 1979).

Our Court of Appeals has considered whether privity exists, between a police

officer and a State, in a Section 1983 action.  See, Duncan v. Clements, 744 F.2d 48

(8th Cir. 1984).  In Duncan, the plaintiff had successfully suppressed evidence, in a

prior criminal proceeding, because of an illegal search and seizure by the defendant

police officer.  Id. at 51.  In a subsequent Section 1983 action, the plaintiff sought to

prevent the police officer from relitigating the constitutionality of the plaintiff's arrest

and search.[6]  Id.  The Court concluded that collateral estoppel did not apply against

the police officer because he was not in privity with any party at the prior State Court

criminal proceeding.  Id. at 51-52.  Specifically, the Court observed that "the interests

of the State of Missouri in a criminal proceeding are not identical to those of an

individual officer," because "'[t]he purpose of a criminal court is not to provide a

forum for the ascertainment of private rights.'"  Id. at 52,  quoting United States v.

---

[6]In deciding not to apply collateral estoppel, our Court of Appeals interpreted Missouri's law of collateral estoppel, which has been determined to be "a body of law substantially similar to Minnesota's."  Schumacher v. Halverson, supra at 947, citing Willems v. Comm'r of Public Safety, 333 N.W.2d 619, 621 (Minn. 1983).

Standefer, 447 U.S. 10, 25 (1980). "'Rather [criminal court] is to vindicate the public

interest in the enforcement of the criminal law while at the same time safeguarding the

rights of the individual defendant.'" Id.  As a result, the Court concluded that it was

the State who had an interest in the outcome of the criminal proceeding against the

plaintiff, and not the police officer.  Id.

Similarly, we find that the Defendants were not in privity with the State of

Minnesota, in the Plaintiff's prior State Court proceeding.  The State had no interest

in representing the personal interests of the Defendants, and the Suppression Hearing

concerned only the constitutional violation, and not the personal and official liability

of the Defendants.  See, Duncan v. Clements, supra at 52; Schumacher v. Halverson,

supra at 947 (finding that the Commissioner of Public Safety had "no interest in

representing the individual police officer involved in the arrest."); Turpin v. County

of Rock, 262 F.3d 779 782-83 (8th Cir. 2001)(relying on Nebraska law to determine

that an earlier Suppression Order did not require the invocation of collateral estoppel

against the defendant police officers, because they were not in privity with the State

in the criminal action); State v. Lemmer, supra at 661 ("When determining whether

privity exists, the proper focus is on whether the legal rights of the party to be

- 17 -

estopped were adequately represented by the party to the first litigation.")[citation omitted].

Furthermore, the Defendants did not have a full and fair opportunity to be heard at the Suppression Hearing, with respect to the Plaintiff's current claims. In <u>Duncan</u>, the Court of Appeals noted that the police officer "clearly had no control over nor did he substantially participate in control of the state's presentation of its case." <u>Duncan v. Clements</u>, supra at 52. It also observed that, although the police officer had been a witness at the Suppression Hearing, he had no control over the prosecutor or the decision to prosecute. <u>Id.</u> The Court of Appeals further recognized that the police officer had no ability to appeal the State Court's decision. <u>Id.</u>

We find the circumstances here to be indistinguishable. The Defendants' interests were not represented, or litigated, at the Suppression Hearing. Although the Defendants testified, they had no "measure of control over the [prosecutor's] case, the witness selection, or any opportunity to present argument on their own behalf." <u>Schumacher v. Halverson</u>, supra at 948. Nor could the Defendants have filed an appeal of the Suppression Order. See, <u>Rule 28.04, Subdivision 1 Minnesota Rules of Criminal Procedure</u>. Accordingly, we find that the Defendants were not afforded a full and fair opportunity to litigate the Fourth Amendment violations and, as a result,

- 18 -

we conclude that the Plaintiff cannot invoke collateral estoppel against the Defendants with respect to his current claims.

      1.    <u>The Plaintiff's Fourth Amendment Claim</u>.  The Defendants contend that they are entitled to qualified immunity as to the Plaintiff's Fourth Amendment claim, arising out of the search of the Plaintiff's vehicle, and his subsequent arrest.[7]

      Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages, unless their conduct violates clearly established statutory, or constitutional rights, of which a reasonable person would have known.  See, <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999); <u>Young v. Harrison</u>, 284 F.3d 863, 866 (8th Cir. 2002); <u>Winters v. Adams</u>, 254 F.3d 758, 766 (8th Cir. 2001).  "To withstand a claim of qualified immunity at the summary judgment stage, a plaintiff must assert a violation of constitutional or statutory right; that right must

---

    [7]In his Amended Complaint, the Plaintiff also alleges that the Defendants did not follow the legal process, and therefore, violated his Due Process rights.  See, <u>Amended Complaint</u>, supra at p.4.  However, the Plaintiff's allegation plainly relates to his claim that the Defendants had no legal basis to arrest him, or to search his vehicle, and therefore, we understand the Plaintiff to argue that the Defendants should have secured a Warrant for his arrest, and one to search his vehicle.  Because we conclude that the Defendants had probable cause to arrest the Plaintiff, as well as to search his vehicle, even without a Warrant, we recommend that the Plaintiff's purported Due Process claim also be denied.

have been clearly established at the time of the violation; and given the facts most favorable to the plaintiff, there must be no genuine issue of material fact as to whether a reasonable officer would have known that alleged action indeed violated that right." Mettler v. Whitledge, 165 F.3d 1197, 1202 (8th Cir. 1999); see also, Young v. Harrison, supra at 866-67.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." Wilson v. Layne, supra at 614.  The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 641 (1987).  As a consequence, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996).

When qualified immunity is asserted in a Section 1983 action, we "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all * * *." Jones v. Shields, 207 F.3d 491, 494 (8th Cir. 2000), quoting Wilson v. Layne, supra at 609 [citations omitted]. "Only then do we ask whether that right was clearly established at the time of the alleged violation." Id.; see, Coonts v. Potts, 316 F.3d 745, 750 (8th Cir. 2003), citing Siegert v. Gilley, 500 U.S. 226, 232 (1991).

Here, the Plaintiff's claim is premised on the Fourth Amendment, which assures that "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." United States Constitution, Amendment IV. "Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions." United States v. Kennedy, 427 F.3d 1136, 1140 (8th Cir. 2005), citing United States v. Hill, 386 F.3d 855, 858 (8th Cir. 2004). The burden rests with the Government to establish the existence of an exception to the Warrant requirement. Id.

One such exception is a search incident to a valid arrest. See, e.g., New York v. Belton, 453 U.S. 454, 461 (1981); Chimel v. California, 395 U.S. 752, 762 (1969); United States v. Klein, 13 F.3d 1182, 1184 (8th Cir. 1994), cert. denied, 512 U.S. 1226 (1994). As our Court of Appeals has explained:

> The authority to search the person incident to a lawful
> custodial arrest, while based upon the need to disarm and to
> discover evidence, does not depend on what a court may
> later decide was the probability in a particular arrest
> situation that weapons or evidence would in fact be found
> upon the person of the suspect.

Conrod v. Davis, 120 F.3d 92, 96 (8th Cir. 1997), cert. denied, 523 U.S. 1081 (1998), citing United States v. Robinson, 414 U.S. 218, 235 (1973).

"A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."  Id.; see also, Curd v. City Court of Judsonia, Arkansas, 141 F.3d 839, 842 (8th Cir. 1998)("Warrantless searches incident to a custodial arrest are 'justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained.'"), quoting United States v. Edwards, 415 U.S. 800, 802-03 (1974).

Here, it is undisputed that the Defendants had probable cause to conduct a traffic stop of the Plaintiff for his malfunctioning taillights.  See, United States v. Wright, 512 F.3d 466, 471 (8th Cir. 2008)("Any traffic violation, however minor, provides probable cause for a traffic stop."), quoting United States v. Bloomfield, 40

F.3d 910, 915 (8th Cir. 1994), cert. denied, 514 U.S. 1113 (1995); United States v. Hephner, 103 Fed.Appx. 41, 46 (8th Cir. 2004).

Next, the Defendants approached the Plaintiff's vehicle, and Meyer noticed that Young was bending forward at the waist, and digging around in a black bag.[8]  See, Complaint, supra, Exhibit 1 at 2.  As Meyer approached the driver's side of the vehicle, he saw Young move her hands away from the black bag.  Id.  Meanwhile Hall, who was approaching on the passenger's side of the vehicle, noticed that Young's voice cracked when she spoke, and that she appeared to be physically shaking.  Id.  When Hall asked Young if she had anything illegal on her person, Young admitted to possessing a small amount of marijuana, which she eventually

---

[8] The Plaintiff contends that the Defendants' search of Young's bag violated the Fourth Amendment, but he does not have "standing" to assert that claim.  "[T]he product of a fourth amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damning evidence." Alderman v. United States, 394 U.S. 165, 171-72 (1969); see also, Minnesota v. Carter, 525 U.S. 83, 99 (1998); Rakas v. Illinois, 439 U.S. 128, 134 (1978)("In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]"); United States v. Rodrequez, 859 F.2d 1321, 1325 (8th Cir. 1988)(no standing to challenge the search of a codefendant, even when evidence uncovered during the search of the codefendant resulted in the search of the defendant's vehicle), cert. denied, 489 U.S. 1058 (1989); United States v. Baucom, 611 F.2d 253, 254-55 (8th Cir. 1979)(no standing for defendant to challenge the search of an unindicted coconspirator).

turned over to Hall.  Id.  After Young's admission, Young's black bag was searched, and the Defendants discovered the crack cocaine.  Id.

Based upon our review of the Record, we conclude that the search of Young's bag was supported by probable cause, pursuant to the binding precedent of this Circuit.  When a passenger admits that she has drugs on her person, our Court of Appeals has repeatedly held that there is probable cause for a subsequent search of her person.  See, United States v. Bell, 183 F.3d 746, 749 (8th Cir. 1999)(finding that the passenger's admission, that she had crack cocaine on her person, provided probable cause for the ensuing search of her person); United States v. O'Neal, 17 F.3d 239, 243 (8th Cir. 1994)(determining that the defendant's voluntary statement, that there were drugs present in the bag, was probable cause for the subsequent search), cert. denied, 513 U.S. 960 (1994); see also, United States v. Boston, 494 F.3d 660, 665 (8th Cir. 2007)(finding that voluntary statements by the defendant, that he had a knife and naughty pictures of children in his backpack, furnished probable cause for ensuing search and arrest).  Here, Young admitted that she had marijuana on her person, and gave Hall her compact, which contained the marijuana. Young's admission provided Hall with the requisite probable cause for the subsequent search of her black bag.

- 24 -

The Defendants subsequently searched the Plaintiff's vehicle, after the discovery of crack cocaine in Young's black bag.  It is the search of the Plaintiff's vehicle which forms the basis for his Fourth Amendment claim.  As we have noted, a search incident to "[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."  Conrod v. Davis, supra at 96.  Although the Plaintiff was not arrested until after the discovery of crack cocaine in his central console, the exact sequence of events is irrelevant, because  the Plaintiff was arrested shortly after the subsequent search.  See, Rawlings v. Kentucky, 448 U.S. 98 (1980).

In Rawlings, the petitioner had challenged the search of his person, which resulted in the seizure of money and a knife.  Id. at 103.  The petitioner was searched shortly after he had claimed ownership over drugs in another individual's purse , but prior to the petitioner's arrest.  Id. at 110-11.  Nonetheless, the Supreme Court determined that the arrest need not preclude the search because  "[o]nce the petitioner admitted ownership of the sizable quantity of drugs found in [the] purse, the police clearly had probable cause to place petitioner under arrest."  Id. at 111.  As a result, "[w]here formal arrest followed quickly on the heels of the challenged search of

petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." Rawlings v. Kentucky, supra at 111 [citations omitted]; see also, United States v. Brooks, 290 Fed.Appx. 955, 960 (8th Cir. 2008)(finding that the search of the defendant was justified "as a search incident to a lawful arrest, which is valid 'even if it is conducted before the actual arrest, provided that (1) the arrest and the search are substantially contemporaneous, and (2) probable cause to arrest existed before the search.'"), quoting United States v. Ilazi, 730 F.2d 1120, 1126 (8th Cir. 1984)[citations omitted]; United States v. Riley, 351 F.3d 1265, 1269 (D.C. Cir. 2003)( "Given that police had probable cause to arrest * * * [i]t is of no import that the search came before the actual arrest."); United States v. Banshee, 91 F.3d 99, 102 (11th Cir. 1996)("Moreover, because there was probable cause for the arrest before the search and the arrest immediately followed the challenged search, the fact that Banshee was not under arrest at the time of the search does not render the search incident to arrest doctrine inapplicable."), cert. denied, 519 U.S. 1083 (1997).

Here, after the discovery of crack cocaine in Young's black bag, the Plaintiff said "[i]t's not her's it's, it's mine," and "[s]he has a crack problem and I bought it for her." Complaint, supra, Exhibit 1 at 2. Here, as in Rawlings, once the Plaintiff admitted to owning the crack cocaine, the Defendants had probable cause to place him

under arrest. See, Rawlings v. Kentucky, supra at 111. After the Plaintiff's admission, the Defendants searched the vehicle, and discovered more crack cocaine, before arresting the Plaintiff.  See, Amended Complaint, supra at p. 3.  Since the Plaintiff's formal arrest quickly followed the search of his vehicle, the sequence of events does not render the search unconstitutional.  See, Rawlings v. Kentucky, supra at 111; United States v. Brooks, supra at 960; United States v. Riley, supra at 1269; United States v. Banshee, supra at 102.

Nor does it make any difference that it was the Plaintiff's vehicle, rather then his person, that was searched prior to his arrest.  See, United States v. Powell, 483 F.3d 836, 839 (D.C. Cir. 2007)(finding that Rawlings supported a vehicle search), cert. denied, --- U.S. ---, 128 S.Ct. 646 (2007); United States v. Smith, 389 F.3d 944, 952 (9th Cir. 2004)(finding that, for Rawling purposes, no distinction is made between a search of a person, and a search of a vehicle), cert. denied, 544 U.S. 956 (2005); United States v. Ceballes-Gamez, 1995 WL 163589 at *2 (9th Cir. 1995)[Table Decision].

In addition, the Defendants were permitted to search the central console of the vehicle, because a search incident to arrest may include all areas within the immediate control of the arrestee, including the passenger compartment of an automobile that

was occupied by an arrestee at the time of his arrest.  See, <u>New York v. Belton</u>, supra at 460.  As a result, the scope of a permissible vehicle search extends to all containers within the passenger compartment of the automobile, including "glove compartments, consoles, and other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, and the like."  <u>Id.</u> at 1261, n. 4; accord, <u>United States v. McCready</u>, 774 F.2d 868, 871-872 (8th Cir. 1985)(glove compartment); see also, <u>United States v. Pogemiller</u>, 375 F.3d 686, 688 (8th Cir. 2004)(trap door which leads to an area connecting the trunk of the vehicle to the vehicle's back seat); <u>United States v. Caldwell</u>, 97 F.3d 1063, 1067 (8th Cir. 1996)(hatchback area); <u>United States v. Veras</u>, 51 F.3d 1365, 1372 (7th Cir. 1995)(secret compartments located within the back seat).  As the owner and driver of the vehicle, the Plaintiff had access to the central console, prior to the vehicle search, and accordingly, we find no basis for a Fourth Amendment claim, based upon the search of the Plaintiff's vehicle.

The Plaintiff also alleges that his Fourth Amendment rights were violated when the Defendants arrested him, following the search of his vehicle.  See, <u>Amended Complaint</u>, supra at p. 4.  "Determining probable cause to arrest requires the Court to focus on the moment the arrest was made, and to ask whether 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably

trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" United States v. Taylor, 106 F.3d 801, 803 (8th Cir. 1997), quoting Beck v. Ohio, 379 U.S. 89, 91 (1964); see also, Kiser v. Huron, 219 F.3d 814, 816 (8th Cir. 2000)("Furthermore, '[a]n officer has probable cause to make a warrantless arrest when facts known to the officer are sufficient to make a reasonably prudent officer believe that the suspect is committing or has committed an offense.'"), quoting Olinger v. Larson, 134 F.3d 1362, 1366 (8th Cir. 1998); Tokar v. Bowersox, 198 F.3d 1039, 1046-47 (8th Cir. 1999)("The existence of probable cause in fact to make a warrantless arrest depends upon whether, at the moment the arrest was made, the facts and circumstances within the arresting officers' knowledge, and of which they had reasonably trustworthy information, were sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense.").

At the time of his arrest, the Plaintiff had admitted to purchasing and possessing crack cocaine, and the Defendants discovered additional crack cocaine, during the subsequent search of the Plaintiff's vehicle. It is readily apparent that the Plaintiff's possession of the crack cocaine gave the Defendants probable cause to effectuate his arrest. See, Minnesota Statutes Section 152.025 Subdivisions 2(1), and

3(a); Rawlings v. Kentucky, supra at 111.  Furthermore, the Plaintiff was driving with a suspended license, which is a misdemeanor offense, see, Minnesota Statutes Section 171.24, Subdivision 2, and therefore, the Defendants also had probable cause to arrest the Plaintiff based on that offense.   See, Minnesota Statutes Section 629.34 Subdivision, 1(1)(a peace officer may make an arrest without a Warrant "when a public offense has been committed or attempted in the officer's presence"); United States v. Rambo, 789 F.2d 1289, 1294 n.4 (8th Cir. 1986)("The term 'public offense' has been construed to embrace petty misdemeanors."), citing Smith v. Hubbard, 91 N.W.2d 756, 761 (1958), and State v. Sellers, 350 N.W.2d 460, 462 (Minn.App. 1984);  see also,  Rule 6, Minnesota Rules of Criminal Procedure, ("Law enforcement officers acting without a warrant * * * shall issue citations for * * * misdemeanors, unless it reasonably appears to the officer that arrest or detention is  necessary to prevent * * * further criminal conduct [.]"); State v. Olson, 2000 WL 1376541 *2 (Minn.App. September 26, 2000)(finding that the officer "could reasonably have concluded that arrest was necessary to prevent the further criminal conduct of driving after suspension.").  Taking these circumstances into account, we conclude that there

was sufficient probable cause to support the Plaintiff's arrest, and we find the

Plaintiff's Fourth Amendment claim to be without merit.[9]

---

[9]The Plaintiff might well question why the evidence from the Defendants' search of his vehicle, and from the search of Young's bag, was suppressed in the State Court proceeding, and yet the same searches do not provide a competent basis for recovery in his Section 1983 action. The reason, however, is fairly straightforward. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States * * *." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993), quoting West v. Atkins, 487 U.S. 42, 48 (1988). "Hence, although §1983 provides a citizen with an effective remedy against those abuses of state power that violates [sic] federal law, the constitution does not provide a remedy for abuses that do not violate federal law." Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993). Therefore, "[w]hen evidence obtained by state law enforcement officers is offered in a federal prosecution, 'the legality of [the] search and seizure is not determined by reference to a state statute, but rather is resolved by fourth amendment analysis.'" United States v. Maholy, 1 F.3d 718,, 721 (8th Cir. 1993), quoting United States v. Tate, 821 F.2d 1328, 1330 (8th Cir. 1987), cert. denied, 484 U.S. 1011 (1988), citing, in turn, Cooper v. California, 386 U.S. 58, 61 (1967).

Stated otherwise, "the question '[w]hether evidence obtained by state officers and used against a defendant in a federal trial was obtained by an unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers.'" United States v. Tate, supra at 1330, quoting United States v. Ross, 713 F.2d 389, 393 n. 7 (8th Cir. 1983); see also, United States v. Howard, 532 F.3d 755, 760 (8th Cir. 2008). Applying Federal law, and not State law -- as we must in a Section 1983 action -- the evidence seized by the Defendants was not suppressible under Federal precepts of Fourth Amendment law. All other things being equal, if the Plaintiff had been being prosecuted in a Federal Court in this District, the evidence seized by the Defendants would have been admissible, and the charges against him would not have been dismissed owing to an unlawful search and seizure.

In sum, we recommend that the Defendants' Motion for Summary Judgment be granted with respect to the Plaintiff's Fourth Amendment claims.

3.     The Plaintiff's Eighth and Fourteenth Amendment Claims.  The Plaintiff also claims that his Eighth, and Fourteenth Amendment rights, were violated as a result of the criminal charges that arose from his arrest on February 27, 2003.  In this respect, the Plaintiff alleges that his Eighth Amendment rights were violated because the charges, which were based on that arrest have "affected [the] Plaintiff's custody in Minnesota and Wisconsin," and "influenced [the] Plaintiff's programming needs in the Minnesota Department of Corrections," and have subjected the Plaintiff "to multiple unlawful detentions during the course of the accusation phase and subsequent hearings."  Amended Complaint, supra at p. 4.

In order to sustain a claim under Section 1983, a plaintiff must demonstrate that the named defendants were directly, and personally, involved in the illegal actions, or in the policy decision that created the unlawful context for those actions.  See, e.g., Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001); McNair v. Norris, 2000 WL 490709 at *1 (8th Cir., April 27, 2000); Martin v. Sergeant, 780 F.2d 1334, 1337 (8th Cir. 1985). Here, the Plaintiff has not alleged that the Defendants were personally involved in any of the decisions that affected his programming needs, or his

subsequent detentions.[10]   As a result, the Plaintiff has failed to state a constitutional

claim against these Defendants concerning his programming, and we recommend that

Summary Judgment be granted as to the Plaintiff's Eighth Amendment claim.[11]

In addition, the Plaintiff alleges that his Equal Protection rights were violated

"due to [the] Plaintiff not being able to have his record expunged," because he is

incarcerated.  Id.  The Fourteenth Amendment's Equal Protection Clause requires

Government actors to treat persons, who are similarly situated, alike.  See, City of

Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); see also, Creason

v. City of Washington, 435 F.3d 820, 823 (8th Cir. 2006).   Here, the Record

demonstrates that the State Court declined to expunge the Plaintiff's criminal record,

because he remained incarcerated.  As noted, the Plaintiff must allege facts that show

that the Defendants were involved in the actions, or the policy decision, which

resulted in the denial of the Plaintiff's petition for expungement.  See, Complaint,

---

[10]In fact, the Plaintiff asks that we enjoin the Minnesota Department of Corrections
from changing his programming, and **not** the Defendants. See, Amended Complaint,
supra at p.6.  Of course, neither the State of Minnesota, nor any of its agencies,
inclusive of the Department of Corrections, are Defendants in this matter, and
therefore, are not subject to our jurisdiction.

[11]Moreover, since we have found no constitutional violation arising from the
Defendants search and seizures, which led to the Plaintiff's arrest, they could not be
liable for any collateral consequences of their lawful acts.

supra, Exhibit 5 ("The Judge will not consider the expungement of this matter while the petitioner is incarcerated.").  The Plaintiff's Amended Complaint is barren of any allegations that  would support the conclusion that the Defendants were personally involved in the State Court's decision on expungement.  As a consequence, we recommend that the Plaintiff's Fourteenth Amendment claim be dismissed.

In sum, we recommend that the Defendants' Motion for Summary Judgment be granted in all respects.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendants' Motion for Summary Judgment [Docket No. 16] be granted.

Dated:  February 6, 2009 　　　　　 *s/Raymond L. Erickson*
　　　　　　　　　　　　　　　　　　　Raymond L. Erickson
　　　　　　　　　　　　　　　　　　　CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than February 24, 2009,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 24, 2009,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.